[No. 18540.   Department One.   October 6, 1924.]

SEATTLE FACTORY SITES COMPANY *et al., Respondents,*
v. G. W. SAULSBERRY *et al., Appellants.*[1]

BOUNDARIES (10-1)—ACTIONS TO ESTABLISH—NECESSARY PARTIES—
PLEADING AND ISSUES.  A complaint to establish numerous disputed
boundaries between shore lands abutting on a cove sufficiently
shows that the boundaries are obscure or uncertain, within Rem.
Comp. Stat., § 947, and that the true location of any boundary is
dependent upon the true location of all the boundaries, where it
appears that the state conveyances failed to define the division
boundary lines between the several tracts, and the irregular curva-
ture of the shore renders converging lines necessary.

APPEAL (316)—RECORD—STATEMENT OF FACTS—CERTIFICATE AS TO
ALL THE EVIDENCE.  In the absence of a statement of facts certified
as containing all the evidence, it must be presumed that the trial
court correctly disposed of the questions of fact.

Appeal from a judgment of the superior court for
King county, Smith, J., entered October 19, 1923, in
favor of the plaintiffs, in an action to establish boun-
dary lines, tried to the court. Affirmed.

*H. E. Foster,* for appellants.

*Battle, Hulbert, Gates & Helsell, Stratton & Kane,*
and *Paul W. Houser,* for respondents.

PARKER, J.—The plaintiffs, Seattle Factory Sites
Company, and others, commenced this action in the
superior court for King county against the defend-
ants, George W. Saulsberry, C. V. A. Mattson and
others, under the provisions of § 947, Rem. Comp.
Stat. [P. C. § 7412], reading as follows:

"Whenever the boundaries of lands between two òr
more adjoining proprietors shall have been lost, or by
time, accident, or any other cause shall have become
obscure or uncertain, and the adjoining proprietors

[1]Reported in 229 Pac. 10.

cannot agree to establish the same, one  or more of
said adjoining proprietors may bring his civil action
in equity, in the superior court for the county in which
such lands, or part of them, are situated, and such
superior court, as a court of equity, may, upon such
complaint, order such lost or uncertain boundaries to
be erected and established and properly marked.''

A decree is sought establishing the boundaries be-
tween each and all of the tracts of shore lands owned
severally by each of the numerous plaintiffs and de-
fendants abutting on their respective uplands on and
around a cove or bay at the southerly end of Lake
Washington.  Such proceedings and trial as prescribed
by the statute relating to such controversies were had,
resulting in a decree of the superior court establishing
the boundaries·between each of the tracts of shore
land of the several parties to the action, from which
the defendants Saulsberry and Mattson have appealed
to this court.

The facts as alleged in the complaint, so far as we
need here notice them, may be summarized as follows:
The lands in question are a large number of tracts
of shore lands of Lake Washington lying in a cove
or bay with irregularly curved shores between two
projecting headlands at the southerly end of the lake.
Each of the numerous parties to the action separately
owns one or more of the several tracts of shore land
under separate conveyances from the state of Wash-
ington. None of the shore lands so owned by appel-
lants directly joins any of the shore lands owned by
the plaintiffs.  It is alleged in the complaint:

"XV.

''That as shown by the state deeds conveying said
second class shore lands to plaintiffs and defendants
respectively, or their predecessors in interest, the same
did not define, or undertake to define by course or dis-

tance, the side lines, or even the outer lines of the shore lands so conveyed, but that the said different grants only described the property as shore lands of the second class owned by the state of Washington, situate in front of, adjacent to or abutting upon the up-land in said respective deeds mentioned, and that under the law and the decisions of the courts of this state, the outer or exterior boundaries of said shore lands are coterminous with said inner harbor lines.

## "XVI.

"That it has been found impossible for two or more of said shore land owners to agree, and they cannot agree, upon the division or boundary side lines or the establishment thereof between their respective tracts of said shore lands, because of the complexity involved in the practical application of the rules of law applicable thereto, and also because to so agree would leave undetermined and in dispute the boundary line between such parties and the next adjoining owner of such shore land, and that the determination of one side of the boundary line necessarily involves the determination of the opposite or other boundary line.

## "XVII.

"That the above stated condition has resulted in disputes between some of the owners of said shore lands as to the true location of the boundary lines as to the several and numerous tracts of said shore lands; and that the entire matter of the boundary lines of said several and numerous tracts of said shore lands, and as to what rule or principle of law is properly applicable thereto, is uncertain, resulting in claims and contentions by the parties in interest, which constitute clouds upon the title of these plaintiffs, and likewise upon the titles of defendants.

## "XVIII.

"That said disputes and uncertainties not only cast clouds upon said titles, but will result in frequent and numerous suits to settle said boundary lines, unless said boundary lines are fixed, settled and determined

in this action; and that furthermore a suit or suits between two or more only of the parties to this action, either plaintiffs or defendants, to settle the boundary lines of their respective tracts of shore lands, would finally result in all of the parties in interest between said headlands being made parties to said litigation.''

These facts are admitted by the answers of appellants.

The principal contention here made in behalf of appellants seems to be that the trial court erred in entertaining the complaint as against them, because of want of allegations therein that the boundaries of their shore lands are obscure or uncertain, and because of want of allegation of any direct controversy between appellants and plaintiffs with respect to the location of the boundaries of appellants' shore lands. In view of the failure of the conveyances from the state to define the division boundary lines between the several tracts of shore lands and the uncertainty of the true location of such boundaries, in view of the necessary converging lines thereof by reason of the irregular curvature of the shore of the cove or bay, it seems to us, it renders the proper determination of the true location of any of such boundaries dependent upon the determination of the true location of all of such boundaries. This, we think, becomes apparent when we consider the general principles of law applicable to the determination of the true location of such undefined boundaries, which are well stated in the leading case of *Northern Pine Land Co. v. Bigelow & Co.*, 84 Wis. 157, 54 N. W. 496, 21 L. R. A. 776, as follows:

''Where the general course of the shore is a straight line, or approximates a straight line, and the division lines between coterminous riparian owners are at right angles with the shore, there would seem to be no difficulty in reaching the navigable water by straight

parallel lines; but where there is much diversity and irregularity in the shore line the difficulty of making a just division is increased, and the adherence to a universal rule rendered impossible. Where the general course of the shore line is much curved, either outwardly or inwardly, the boundary lines within which the riparian owner is required to confine himself in reaching the navigable water must necessarily be either divergent or convergent, according as the navigable water line is longer or shorter than the shore line. The general rule early adopted in Massachusetts, and since adhered to, was borrowed from the civil law, and is to the effect:

"(1) To measure the whole extent of the ancient bank or line of the river, and compute how many rods, yards, or feet each riparian proprietor owned on the river line; (2) to divide the newly-formed bank or river line into as many equal parts as such shore line contained rods, yards, or feet, and then to appropriate to each proprietor as many of such parts of such new river line as he owned rods, yards, or feet on the old; and then, to complete the division, lines are to be drawn from the points at which the proprietors, respectively, bounded on the old, to the points thus determined as the points of division on the newly formed shore. *Deerfield v. Arms,* 17 Pick. 45, 46, 28 Am. Dec. 276. In stating the rule, Shaw, C. J., there indicates that it may perhaps require modification under particular circumstances, as, for instance, where such lines happen to be elongated by deep indentations or sharp projections, and then the *general line* ought to be taken, instead of the actual line."

See, also, *Stuart v. Greanyea,* 154 Mich. 132, 117 N. W. 655, 25 L. R. A. (N. S.) 257. The authorities are reviewed and collated in notes appended to both of these cases in these cited volumes of L. R. A. We are of the opinion that the admitted allegations of the complaint necessarily incidentally draw in question each and every boundary line dividing all of the tracts of shore land; that a proper determination of one

necessarily calls for the determination of all others; and hence that it was proper to bring in the owners of all the tracts as parties to the action, to the end that the decree ultimately to be rendered should become effective as against all such owners. The text and authorities found in 9 C. J. 269 support this conclusion.

Some contention is made in behalf of appellants that the evidence introduced upon the trial calls for the conclusion that there was in fact no uncertainty as to the side boundary lines of the several tracts of shore land owned by appellants. This presents a question of fact as to which we are unable to express any opinion, because we do not have before us any statement of facts certified as containing all of the evidence introduced upon the trial. Some of the evidence is quoted in the brief of appellants and relied upon as supporting this contention. The evidence so noticed by counsel for appellants, conceding, for the purpose of argument, that it furnishes some ground for such contention, hardly seems to us to be conclusive in appellants' behalf, even if it were all the evidence. However, we are not advised but what there may have been other evidence before the court showing otherwise. So far as can be determined from the record before us, we must presume that the trial court correctly disposed of the case upon the evidence.

The decree is affirmed.

Main, C. J., Mackintosh, Holcomb, and Tolman, JJ., concur.